### LILLY et al. v. YEARY.

(Court of Civil Appeals of Texas. Amarillo. Dec. 14, 1912. Rehearing Denied Jan. 18, 1913.)

1. PLEADING (§ 417*)—DEMURRER—FORM AND REQUISITES.

Under rule 6 for district and county courts (142 S. W. xvii), providing that the answer shall consist of an original answer and such supplemental answers as may be necessary, and that they shall be indorsed so as to show their respective positions, as "Original Answer," "Defendants' First Supplemental Answer," etc., and rule 13 (142 S. W. xviii), providing that the party amending shall point out the instrument sought to be amended as the "Original Answer," etc., and amend by filing a substitute, to be styled and indorsed "Amended Original Answer," etc., where defendants filed three separate exceptions, indorsed "Demurrers Nos. 1, 2, and 3," and on the same day what was called "Defendants' First Amended Original Answer," which contained general and special exceptions and a general denial, the so-called demurrers were not a part of the amended original answer, and were properly disregarded.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1401, 1402; Dec. Dig. § 417.*]

2. APPEAL AND ERROR (§ 732*)—ASSIGNMENTS OF ERROR—REFERENCE TO MOTION FOR NEW TRIAL.

Assignments of error filed in March, 1912, before attorneys were generally aware of the amendment of rule 25 for Courts of Civil Appeals (142 S. W. xii), will be considered, although they do not refer to the ground in the motion for new trial, setting up the alleged error, as required by that amended rule.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3022–3024; Dec. Dig. § 732.*]

3. LIMITATION OF ACTIONS (§ 127*)—COMMENCEMENT OF ACTION—AMENDMENT OF PLEADINGS.

The petition in an action by a married woman, in which her husband joined, alleged the making of a contract with defendant, a real estate broker, by the wife in the husband's presence, and with his consent, by which she was to have a share of the broker's commissions on sales to purchasers sent him by her. An amended petition, filed after a new action would have been barred by limitations, in which the husband was named as sole plaintiff, alleged the making of the contract by him. Held, that the contract alleged in both petitions was the same; and hence the cause was not barred by limitations, since the contract alleged in the original petition was the husband's contract, made by the wife as agent, in view of Rev. St. 1895, art. 2970, which is the only statute authorizing a married woman to contract, and which only authorizes her to contract debts for necessaries furnished herself or children, and for expenses incurred by her for the benefit of her separate property.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 543–547; Dec. Dig. § 127.*]

4. HUSBAND AND WIFE (§§ 208, 221*)—RIGHT OF ACTION BY WIFE ON CONTRACT.

A wife could not sue in her own name on a contract made in her husband's presence, and with his consent, with a broker for a share of commissions on sales to persons procured by her, and was not a necessary or proper party to a suit on such contract by the husband.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 760–764, 707, 802–806; Dec. Dig. §§ 208, 221.*]

5. HUSBAND AND WIFE (§ 79*)—CONTRACTS—CAPACITY TO CONTRACT.

A married woman has no power, except such as is given by statute, to bind herself personally by a contract.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 317–323; Dec. Dig. § 79.*]

6. HUSBAND AND WIFE (§ 259*)—RIGHT OF HUSBAND TO WIFE'S EARNINGS.

The earnings of a husband and wife belong to the community estate, and are under the control of the husband.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 911; Dec. Dig. § 259.*]

7. HUSBAND AND WIFE (§ 23¾*)—AGENCY OF WIFE FOR HUSBAND.

Authority on the part of a wife to act as agent for her husband may be presumed from the acts and conduct of the parties.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 145, 146; Dec. Dig. § 23¾.*]

8. HUSBAND AND WIFE (§ 229*)—ACTIONS—VARIANCE.

Where the petition alleged a contract with a broker to pay plaintiff a share of his commissions on sales to purchasers procured by plaintiff, while the evidence showed the making of such a contract by plaintiff's wife in his presence, and with his consent, there was no variance.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 816–834; Dec. Dig. § 229.*]

9. APPEAL AND ERROR (§ 1040*)—REVIEW—HARMLESS ERROR.

The erroneous overruling of exceptions to allegations of fraud in the petition, in an action on contract, was harmless, where the question of fraud was not submitted to the jury.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4089–4105; Dec. Dig. § 1040.*]

10. HUSBAND AND WIFE (§ 232*)—ACTIONS—ADMISSIBILITY OF EVIDENCE.

Testimony of plaintiff, suing on a contract between his wife and a broker for a share of the broker's commissions on sales made to purchasers procured by the wife, that he was present and joined in the conversation in making the contract, and adopted it, was properly admitted; the witness by "adopt" apparently

meaning that he assented to the contract, and that it was his contract.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 844–848; Dec. Dig. § 232.*]

### 11. APPEAL AND ERROR (§ 901*)—BURDEN OF SHOWING ERROR.

Where the record leaves it in doubt whether an alleged erroneous instruction was requested by appellant, as claimed by appellee, it will be presumed that it was so requested, since it is the duty of an appellant to show error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3670; Dec. Dig. § 901.*]

### 12. BROKERS (§ 82*)—ACTION FOR SHARE OF COMMISSIONS—PLEADING—SUFFICIENCY.

In an action against L. and others, real estate brokers, for a share in the commission on a sale, a petition alleging that the other brokers knew of L.'s agreement with plaintiff, and of the part plaintiff and his wife had taken to secure the purchasers, that they entered into an agreement with L. to defeat plaintiff's claim, sold the land, got the commission, and divided it, and also alleging that they had promised that plaintiff should have his part of the commission, sufficiently alleged a ratification of L.'s contract by the other brokers.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 101–103; Dec. Dig. § 82.*]

### 13. PARTNERSHIP (§ 218*)—ACTIONS AGAINST —VERDICT.

A verdict against "C. & S." was not necessarily, because of the use of their names conjunctively, a verdict against them as a partnership, where they were also sued as individuals.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 426–428; Dec. Dig. § 218.*]

Appeal from Ochiltree County Court; R. I. Hanna, Judge.

Action by W. G. Yeary against W. E. Lilly and others. Judgment for plaintiff, and defendants appeal. Affirmed.

R. T. Correll, of Ochiltree, and Crudgington, Works & Umphres, of Amarillo, for appellants. W. F. Shipp, of Ochiltree, and Theodore Mack, of Ft. Worth, for appellee.

HUFF, C. J. This suit was originally instituted by Mrs. M. M. Yeary, wife of W. G. Yeary, in which suit W. G. Yeary was joined as party plaintiff. As originally instituted, it was against W. E. Lilly alone, and filed on the 29th day of August, 1910. The suit as originally brought was to recover part of the commissions alleged to be due plaintiffs by reason of a contract entered into between W. E. Lilly and Mrs. M. M. Yeary and her husband, in which it was agreed that Mrs. Yeary would direct parties coming to Ochiltree county to purchase land to Lilly, and that he would take the parties, and if he effected a sale to them that he would give Mr. and Mrs. Yeary one-half of the commission so earned; that one W. J. Smith and wife, in answer to letters by Mrs. Yeary, came to the county in search of land and were directed to Lilly, who took said parties and sold them the land described in the petition, for which services he received $1,000 commission. Mrs. Yeary and her husband, appellee herein, amended

their petition in October, 1910, bringing in A. E. Scott, W. J. Cambern, and W. B. Hansell, parties defendant. On the 21st day of November, 1911, the petition was again amended, W. G. Yeary appearing alone, as plaintiff, the wife, Mrs. M. M. Yeary, not appearing as a party to the suit, and again amended on the 21st day of February, 1912, alleging substantially the same contract, with the exception that he alleges that Lilly made the contract with appellee direct, and does not allege the contract as having been made with the wife. It was sought to make the defendants Scott, Cambern, and Hansell liable, on the ground that they knew the fact that appellee was interested in the sale of the land to Smith and wife, and that he was to receive a commission on the same. It is charged that Cambern admitted to Mrs. Smith and others that he knew appellee was entitled to a commission, and that he would see that he got it, if he had to pay it himself; and it is further charged that the other defendants knew of appellee's interest and were so informed, and that they got the commission and divided it between themselves.

The case was tried at the February term, 1912, of the county court, and a verdict resulted in favor of appellee for the sum of $333.33⅓. The facts show substantially that in August, 1909, Mrs. M. M. Yeary, wife of the appellee, in correspondence with Mrs. W. J. Smith, induced them to come to Ochiltree county to look at the lands, and that previous to their coming an agreement was entered into between Lilly and Mrs. M. M. Yeary, to the effect that when the Smiths should arrive that she would direct them to Lilly, who represented himself as being a real estate agent, and it was agreed that if he sold any land to them that whatever commission he received he would divide it; the term used was "whack it." At this agreement the appellee himself was present and participated in the conversation and took part in its negotiations, and he testifies that he adopted the contract so made. The testimony further shows that when the parties arrived that appellee's wife had Lilly notified of their arrival, and that he came to their place and took the Smiths and carried them to the office of Cambern & Scott, real estate men, and that they were there taken onto the land, of which a sale was effected, and that they were paid a commission of $1,000. The facts further show that Cambern, of the firm of Cambern & Scott, told Mrs. M. M. Yeary that he knew she was to receive a commission, and that he would see that she got $100, $150, or $200, if he had to pay it himself; and Cambern told Mrs. Smith, upon her stating that Mrs. Yeary was entitled to a commission in the sale, "I know that too."

[1] We desire to call attention to the pleadings in the court below. It appears that appellants, defendants below, did not observe

rules Nos. 6 and 13 for the district and county courts (142 S. W. xvii, xviii). They filed three exceptions, apparently separate, which they indorse "Demurrers Nos. 1, 2, and 3," all filed the 21st day of February, 1912, and on same day filed what is denominated "Defendants' First Amended Original Answer," which consists of general exceptions, special exception to all of paragraph 4 of plaintiff's petition, and also exception to all of the six paragraphs of said petition, and pray judgment thereon, and then answer by general denial. The exceptions, as contained in the answer, are not numbered, and, so far as we can ascertain from an inspection of the record, they do not appear to be a part of the three demurrers above mentioned. By filing the first amended, original answer, it would appear that the three instruments indorsed "Demurrers" were waived. True there is a judgment overruling No. 3; but it does not appear whether because waived, or on other grounds. It cannot be said that demurrers are part of the first amended, original answer, and if they did not appear to be such in the trial court we think the court could properly disregard them.

[2] Appellees object to the assignments made by appellants, on the ground that rule No. 25 (142 S. W. xii), as amended, has not been complied with, in that the assignments do not refer to the ground in the motion for new trial, setting up the purported error of the trial court, and which was pointed out in the motion for new trial. The assignments and brief are defective in the particulars complained of, and do not comply with rule No. 25 in the particulars mentioned. As the assignments were filed in March and before the attorneys were generally aware of the amendment, we have decided to consider them. This court has heretofore been liberal in such matters, and under the facts stated in answer to the motion to disregard the assignments, and under the circumstances surrounding the preparation of the assignments and brief, we have concluded to consider the same upon the brief and records as presented.

[3-8] We shall consider appellants' first and fifth assignments together. The first complains of the action of the trial court in refusing to dismiss the cause, because barred by the statutes of limitation; and the fifth is to the action of the court in refusing the special charge of appellants, requesting a peremptory charge for a verdict. Both of these assignments are based on the fact that the contract as originally made by Lilly with the wife of appellee, and that the action as originally brought was on such contract, and that appellee in the petition upon which the case went to trial, declared on a contract made between appellee and Lilly, and the suit on the last declared cause of action was barred by the two-year statute of limitation. It is contended that the uncontroverted testimony adduced upon the trial shows that the appellee declared upon one contract and proved another. It will be seen, therefore, that the above question depends upon the interpretation which should be given to the contract sued on and the one proven, as to whether they presented different causes of action, and whether one supports the other. We have concluded they do not present different causes of action, but are substantially the same. The facts as alleged and proven show that appellee and his wife were living together; that the contract entered into between Lilly and Mrs. Yeary was in the presence of appellee, and by his consent. He joins with her in the first suit and sought recovery with her thereon. In every amendment he asserted the right to recover thereon, either jointly with her or alone. It is not contended but that the contract so made was for the benefit of the community of appellee and his wife. The wife could not maintain an action in her own name for recovery in this case. Wartelsky v. McGee, 10 Tex. Civ. App. 220, 30 S. W. 69; Jackson v. Cross, 36 Tex. 193. She was not a necessary or proper party to the suit. Edrington v. Newland, 57 Tex. 627. It was therefore proper to dismiss her out of the case and permit it to proceed in the name of the husband, the appellee. The only statutory authority given to a married woman to enter into contracts is embodied in article 2970, as follows: "The wife may contract debts for necessaries furnished herself or children and for expenses which may have been incurred by the wife for the benefit of her separate property." It is settled by the decisions in Texas that married women have no power, except such as is affirmatively given by statute to bind themselves personally by contract. Kellett v. Trice, 95 Tex. 160, 66 S. W. 51; Flannery v. Chidgey, 33 Tex. Civ. App. 638, 77 S. W. 1034. It has been held that if she files on school land that the husband should consent thereto. Barnett v. Murray, 54 S. W. 784; Lee v. Green, 24 Tex. Civ. App. 109, 58 S. W. 196, 847. The earnings of a husband and wife in this state belong to the community estate, and therefore is under the control of the husband. Taylor v. Murphy, 50 Tex. 291. Agency on the part of the wife to act for the husband may be presumed from the acts or conduct of the parties. In the case of Walling v. Hannig, 73 Tex. 580, 11 S. W. 547, Judge Statyon said: "Marriage alone confers on the wife an agency under which she may buy necessaries for herself and children, if her husband fails to do so. But a further agency may be presumed from the conduct of the parties. As said by a distinguished English judge: 'Where a husband is living in the same house with his wife, he is liable to any extent for goods which he permits her to receive there. She is considered as his agent, and the law implies a promise on his part to pay the value.'" If the wife cannot make a contract without the consent, either express

or implied, of the husband, and in making the same she acts as his agent, then the contract so made is as much his as if he had in person negotiated its terms and fixed its stipulations. It is the contract made by his agent, the wife. So when the allegation avers a contract made by the wife with Lilly, it follows, if the appellee was present and consented thereto, it was his contract; and when he amended his petition, setting up the fact that it was his contract, he did not declare on a different contract, and the statutes of limitations did not apply; and when the wife testified she negotiated the terms of the agreement while her husband was present and consenting, the testimony did not disprove the allegation that appellee entered into the contract. We therefore overrule assignments Nos. 1 and 5.

[9] By appellants' second assignment of error, it is complained that the court erred in overruling their special exceptions leveled at the plaintiff's petition, wherein fraud is alleged between appellants Lilly, Scott, Cambern, and Hansell, acting in collusion with each other for the purpose and intent to cheat, wrong, and defraud appellee out of his part of the commission. The ground relied upon is that the petition does not allege facts constituting fraud. It is sufficient to state that the court did not submit the question of fraud to the jury, but submitted the case upon an express contract with appellee and the question as to whether the appellants knew said contract and ratified same. The failure to sustain the exception, if error, is not shown in any way to have injured appellants. We therefore overrule the second assignment.

[10] The third assignment complains of the court's action in permitting the appellee, as a witness, to testify that he was present at the conversation between his wife and Lilly and joined in the conversation in making the contract, and that he "adopted" the contract. We think the testimony admissible for the purpose of showing that the contract was entered into with the consent of appellee. The witness evidently meant by "adopt" that he assented to it as his contract, and that it was his contract. This assignment is overruled.

[11, 12] The fourth assignment complains of the action of the court in giving special charge No. 1. This charge is to the effect that if Scott, Cambern, and Hansell knew at the time of the sale of the contract between Lilly and appellee, and had ratified such contract, that the jury would find for the plaintiff against any one or more of the defendants. The grounds urged against this charge appear to be that there is no pleading or evidence to warrant the charge so given. Appellee, in his brief, asserts that the charge as given was requested by the appellants, and therefore, if error, was invited. Appellants, in oral argument, denied having done so. The record leaves it in doubt whether they did or not. There is a special charge, No. 1, requested by appellants and signed by their counsel, asking a peremptory instruction for a verdict. The charge here complained of is also numbered 1, and does not show who requested it. But just under this charge is one numbered 2, signed by attorneys for appellants, and requested by them. Both of these charges were given by the court. We cannot tell whether they were on the same sheet of paper or not. The record leaves the question in doubt as to whose charge it was. We hold that it was the duty of appellants to show that the court erred, and not leave this court in doubt as to the record; and unless they do so we should presume, if there was no pleading or evidence warranting the charge, that the court would not have so charged, unless he was invited thereto by the appellants. It might have been that appellants felt sure of a verdict, if the necessity of ratification was called to the attention of the jury. Be this as it may, the error, if any, is not affirmatively shown to have been that of the court. The testimony shows that Cambern knew of the contract and promises that Mrs. Yeary should not be defeated out of the commission. Mrs. Smith told him that Mrs. Yeary was entitled to commission on the sale, and Cambern told her, "I know that too." Lilly went to appellee's place and got the Smiths, and from there to the real estate office of Cambern & Scott, and from there to the land. The evidence is sufficient to sustain the findings of the jury to the effect that said appellants knew of the contract and dealt with a knowledge of the same, and got the advantage of the efforts of appellee and his wife. And, furthermore, they are charged with such knowledge in the petition, and that they entered into an agreement with Lilly to defeat appellee out of the commission, and knew of the part appellee and his wife had taken to secure the purchasers for land, which Lilly claims he had, listed, and with this knowledge said appellants sold the land, got the commission, and divided it; and it was further alleged that they promised that appellee should have his part of the commission. It occurs to us, while not alleged in specific terms, it alleges facts tantamount to a ratification of the contract. The charge appears to us to be an error against appellee, rather than one in his favor.

The sixth and eighth assignments are overruled for the reasons pointed out in this opinion in considering assignment No. 2. The court did not submit the question of fraud to the jury, but submitted to them as to whether there was a contract with plaintiff and Lilly, and whether Cambern & Scott knowingly got the advantage of such contracts in appellee's efforts in the sale of the land.

[13] The seventh assignment attacks the verdict of the jury because it is against Cambern & Scott, and there is no such firm

shown by the evidence. They appear to have been sued as a partnership, who were engaged in the land and law business. There is no denial of such partnership under oath, as required by law. There is some evidence on which the jury could find against said parties as a partnership. However, they appear to have been brought in also individually; and the fact that the verdict may have used their names conjunctively does not necessarily show that it was against them as a partnership. The facts and the pleading, we think, are sufficient to sustain the judgment, whether it be construed against them as individuals or partners.

We find no such error in the case as requires a reversal, and the judgment is therefore affirmed.