**ALLIED FINANCE COMPANY, Appellant,**

v.

**Lillian BUTAUD et vir, Appellees.**

**No. 15824.**

Court of Civil Appeals of Texas.

Dallas.

April 28, 1961.

Rehearing Denied May 19, 1961.

Locke, Purnell, Boren, Laney & Neely, and John D. Crawford, Dallas, for appellant.

Arthur N. Bishop, Jr., Dallas, for appellees.

YOUNG, Justice.

The suit in trial court was by the finance company for a balance due on an automobile sales contract against the signer, Lillian Butaud, a married woman, also against her husband, J. W. Butaud. After general denial Mrs. Butaud plead her coverture; Butaud alleging that his wife's execution of the sales note was without his consent, authorization or ratification. A trial to the court resulted in judgment for both defendants followed by this appeal.

Plaintiff was assignee of Gerald Sparks, doing business as Sparks Auto Sales, payee in note and mortgage; the latter being originally made a party but was later dismissed from the suit.

The several points of plaintiff company are primarily to effect that under the undisputed testimony the automobile purchased by Lillian Butaud was a "necessary" under Arts. 4621 and 4623, Vernon's Annotated Civil Statutes; also claiming that the husband J. W. Butaud had acquiesced in and ratified the purchase of same, with consequence community liability therefor.

The defendants were living together at Beaumont when the car was purchased there in 1957 from Sparks Auto Sales. Only Mrs. Butaud testified defensively at the trial, the following being excerpts of her testimony given on direct and cross-examination:

"Q. Was Mr. Butaud present when this automobile was bought? A. No, sir, he wasn't.

"Q. Did he know anything about your buying the automobile? A. No; not until after I had done it.

"Q. All right; at the time did you consider this purchase something that was absolutely necessary for your family? A. Yes, sir.

"Q. Why did you so consider it? A. We needed a car at home; we didn't have one.

"Q. You didn't have a car? A. We didn't have one for the first car that was bought; this was the third car that was bought, the one in question.

"Q. All right, did Mr. Butaud say anything to you concerning the purchase of this automobile? A. No, sir.

"Q. Do you know whether Mr. Butaud made any payments on the automobile? A. No, sir. * * *

"Q. Mrs. Butaud, you indicated that you bought this automobile because you considered it necessary for your family, that your family have an automobile? A. Well, we didn't have one at the present time; that is the third one through the same company.

"Q. But you considered this one necessary and traded the other one on this one, did you not? A. Uh-huh.

"Q. You stated that Mr. Butaud never made any payments on the automobile? A. It was made out of the family allowance.

"Q. You were employed, were you not, Mrs. Butaud? A. Yes, sir.

"Q. By whom were you employed? A. Yellow Cab Company.

"Q. What salary did you get there? A. I work on a commission basis, I don't get a salary.

"Q. What would your commission's average a month? A. Around five dollars a day.

"Q. Did you place that money in a separate bank account? A. I didn't make that much.

"Q. You didn't place it in the bank? A. No, sir.

"Q. How did you make the payments on the automobile? By check or by cash? A. Cash.

"Q. You took it over to the finance company to make your payments? A. Uh-huh.

"Q. And normally when would you go to make your payments after you received your commissions from the Yellow Cab Company? A. After I had made the money to make them with, out of what he and I both had.

"Q. Well, now, you say out of what you and he made, where did he keep his money? A. The same place as I did mine, in the dresser drawer.

"Q. Would you go to the dresser drawer and take out enough money to pay Allied Finance Company the payments—both put money in the same dresser? A. Yes sir.

"Q. Isn't it a fact that you made the payments out of money that you yourself earned? A. Not all of them. * * *

"Q. You didn't intend when you purchased the car to immediately assert your rights as a married woman and say that you did not have the authority to bind yourself to pay this money, did you? A. No, I didn't.

"Q. Do you at this time say you want to assert your rights of coverture and not pay the amount of money you borrowed to purchase the automobile? A. Yes, sir."

The contract and note provided for payment in 19 monthly installments and was not declared in default until approximately the end of that period.

In essence, the points of appeal are to effect that the automobile purchased by Lillian Butaud is admitted by her to be a "necessary" and at least with knowledge and acquiescence of the husband; her authority in this regard being limited by the provisions of Arts. 4621, 4623, 4624, V.A.C.S. While, under these statutes, the wife may be the judge of what articles are necessary, reasonable and proper, same must be subject to final determination of court or jury; turning on facts and circumstances of the particular case. Walling v. Hannig, 73 Tex. 580, 11 S.W. 547; Clements v. Ewing, 71 Tex. 370, 9 S.W. 312; Wadkins v. Dillingham, Tex.Civ.App., 59 S.W.2d 1099. In annotations to Article 4624, V.A.C.S., the case of Brook v. Morriss et al., Tex.Civ.App., 212 S.W.2d 257, 260, is cited, stating: "Art. 4624 V.A.C.S. provides that in order for execution to run against the community property and separate property of the wife, it must appear that the debts contracted or the expenses incurred, under the preceding article 'were reasonable and proper.'" "The debt contracted or expense incurred must not only be for a 'necessary' but must be 'reasonable and proper'. This fact issue must be determined from all the facts and circumstances. Speer Law of Marital Rights, 3rd Ed., p. 234; Fairbanks v. Dennett Motor Sales Co., Tex.Civ.App., San Antonio, 56 S.W.2d 474." And see Fairbanks v. Dennett Motor Sales Co., supra, holding: "We are of the opinion that, in view of the provisions of the statute, appellee could not properly have execution against the community estate of the Fairbanks without a finding that the debt sued on was 'reasonable and proper'. Article 4624; Speer's Law of Mar.Rts. § 153; Harris v. Williams, 44 Tex. 124. The burden of eliciting such finding rested upon appellee, who, failing to meet that burden, was not entitled to recover."

In the instant situation, there is no showing that the car so purchased by the wife was a "reasonable and proper" expense, and hence appellant was not entitled to a finding

that same was a "necessary" as a matter of law.

Similarly, a personal liability of the husband does not appear to have been fully developed or even pled. At any rate, considering the testimony adduced in a light most favorable to the trial court's findings, as we must, the judgment so rendered must in all respects be affirmed.